# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
## Roberto PEREZ-SOTO, a/k/a KIKO, a/k/a RICARDO

I, Corey S. Holsinger, being duly sworn, depose and state:

1. I am a Special Agent (SA) with the Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and have been so employed by HSI since May 2009. I am currently assigned to the Document and Benefit Fraud Task Force for the HSI Washington, DC field office (HSI DC). I am responsible for investigating various crimes, including the manufacture and distribution of fraudulent government identification documents, criminal and administrative violations of the Immigration and Nationality Act, and other violations of the United States Code. I have conducted and participated in investigations of the above-listed laws and regulations. I hold a Master's and Bachelor's Degree in Criminology from Indiana University of Pennsylvania, Indiana, Pennsylvania. I have successfully completed the Criminal Investigators Training Program and the ICE Special Agent Training Program at the Federal Law Enforcement Training Center (FLETC).

2. This affidavit does not contain all of the information known to me concerning this investigation. I have included in this affidavit facts that I believe are sufficient to support a probable cause finding for the issuance of the requested criminal complaint and arrest warrant, but I do not purport to include each and every matter of fact observed or known to me or other law enforcement agents involved in this investigation. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

3. This affidavit is submitted in support of a criminal complaint and warrant for arrest charging **Roberto PEREZ-SOTO, a/k/a, KIKO, a/k/a RICARDO** (hereafter referred to as

1

**"PEREZ-SOTO"**), with violation of Title 18, United States Code, Section 1028(a)(2), that is, knowingly transferring identification documents and false identification documents, which appear to be issued by and under the authority of the United States knowing the same to have been produced without lawful authority.

## PROBABLE CAUSE

4. As described below, the investigation by HSI DC Special Agents has established probable cause to believe that **PEREZ-SOTO** is a fraudulent document vendor and manufacturer who manufactures and sells fraudulent identity documents in the District of Columbia.

5. On January 15, 2014, **PEREZ-SOTO** approached an HSI Confidential Informant (CI-1[1]) on Columbia Road NW Washington, DC, and offered to sell CI-1 a Green Card and Social Security Card for $140.00. The contact telephone number provided to CI-1 by **PEREZ-SOTO** was (202) 830-7948 (hereafter referred to as TARGET TELEPHONE).

### Undercover Purchase on January 30, 2014

6. On January 29, 2014, at approximately 3:00 p.m., an HSI Special Agent (SA) instructed an HSI Confidential Informant (CI-2[2]), to call **PEREZ-SOTO** on the TARGET TELEPHONE and request to purchase a set of fraudulent identity documents consisting of one fraudulent legal permanent resident card (also known as a "green card") and one fraudulent U.S. Social Security card.

7. At approximately 3:03 p.m., HSI Special Agents and CI-2 attempted a consensually monitored and recorded phone call to **PEREZ-SOTO** on the TARGET TELEPHONE. An HSI SA using an HSI undercover cellular telephone called **PEREZ-SOTO** on the TARGET TELEPHONE and

---

1. CI-1 has been paid and provided immigration benefits for his/her services.
2. CI-2 has been paid and provided immigration benefits for his/her services.

2

handed the undercover phone to CI-2. **PEREZ-SOTO** did not answer the phone.

8.  At approximately 3:15 p.m., **PEREZ-SOTO** called the undercover cellular telephone from the TARGET TELEPHONE and spoke to CI-2. The conversation was in Spanish and was monitored and recorded. According to CI-2, **PEREZ-SOTO** agreed to sell CI-2 a set of fraudulent identity documents, that is, one legal permanent resident card and one U.S. Social Security card, for $170.00. **PEREZ-SOTO** told CI-2 to text him the photograph and biographical information that CI-2 wanted on the documents. **PEREZ-SOTO** agreed to meet CI-2 the following day in the Columbia Heights area of Washington, DC, near the Columbia Heights Metro station, in order to exchange the documents.

9.  At approximately 3:23 p.m., an HSI SA posing as CI-2 sent a text message from the HSI undercover cellular telephone to **PEREZ-SOTO** on the TARGET TELEPHONE, The text message contained a photo and the purported biographical information of CI-2.

10. On January 30, 2014, at approximately 12:15 p.m., HSI Special Agents established surveillance around the area of the Columbia Heights Metro Station, located at 1400 Irving Street, Northwest, Washington, DC.

11. At approximately 12:25 p.m.., HSI Special Agents dropped off CI-2 near the area of the Columbia Heights Metro station, to wait for the documents to be delivered by **PEREZ-SOTO**, as CI-2 had previously arranged with **PEREZ-SOTO**.

12. At approximately 12:31 p.m., CI-2 called the Agents and stated that CI-2 had just spoken to **PEREZ-SOTO** on the TARGET TELEPHONE and **PEREZ-SOTO** told CI-2 to meet him at the corner of Irving Street, NW and 16th Street, NW.

13. At approximately 12:42 p.m., an HSI SA observed CI-2 meet with **PEREZ-SOTO** near

the intersection of Irving Street, NW and 16th Street, NW. The HSI SA observed CI-2 hand money to **PEREZ-SOTO** in exchange for what appeared to be a small white envelope from **PEREZ-SOTO**.

14. At approximately 12:58 p.m., CI-2 met with HSI Special Agents and handed over to them a white envelope that contained one fraudulent legal permanent resident alien card and one fraudulent U.S. Social Security card that CI-2 had purchased from **PEREZ-SOTO**. The documents were seized by HSI Special Agents and retained as evidence in accordance with HSI policy.

15. At approximately 1:15 p.m., the HSI Special Agents showed CI-2 a photograph of **PEREZ-SOTO**. CI-2 identified **PEREZ-SOTO** as the same person who had just sold CI-2 the fraudulent identification documents that CI-2 handed over to HSI Special Agents.

### Undercover Purchase on April 2, 2014

16. On April 1, 2014, at approximately 12:02 p.m., an HSI Special Agent (SA) instructed CI-2 to call **PEREZ-SOTO** on the TARGET TELEPHONE and request to purchase fraudulent identity documents. An HSI SA, using an HSI undercover cellular telephone, called **PEREZ-SOTO** on the TARGET TELEHONE and handed the phone to CI-2. **PEREZ-SOTO** did not answer the phone.

17. At approximately 12:06 p.m., **PEREZ-SOTO** used the TARGET TELEPHONE to call CI-2 back on the HSI cellular telephone. The conversation between CI-2 and **PEREZ-SOTO** was in Spanish language and was monitored and recorded. According to CI-2, **PEREZ-SOTO** agreed to sell CI-2 one Legal Permanent Resident card ("Green Card"), one Pennsylvania Driver's License and two U.S. Social Security cards, for $240.00, on the following day, April 2, 2014. **PEREZ-SOTO** instructed CI-2 to meet him at the Fort Totten Metro Station in Washington, DC, on the following day, April 2, 2014, to purchase the documents. CI-2 agreed and advised **PEREZ-SOTO** that he or she would bring the passport photos and biographical information to be used by **PEREZ-SOTO** to produce

the requested fraudulent documents.

18. On April 2, 2014, at approximately 10:00 a.m., HSI Special Agents established surveillance at **PEREZ-SOTO's** residence, located at 717 Chillum Road, Hyattsville, Maryland.

19. At approximately 10:30 a.m., HSI Special Agents established surveillance at the Fort Totten Metro Station in Washington, DC.

20. At approximately 11:27 a.m., HSI Special Agents observed **PEREZ-SOTO** exit from 717 Chillum Road, Hyattsville, Maryland, and get into a burgundy Dodge Durango. HSI Special Agents initiated mobile surveillance of **PEREZ-SOTO** as he departed the area in the vehicle.

21. At approximately 11:35 a.m., HSI Special Agents observed **PEREZ-SOTO** arrive at the Fort Totten Metro Station and meet with CI-2. CI-2 entered the passenger side of the vehicle driven by **PEREZ-SOTO.** The vehicle circled the block and **PEREZ-SOTO** then dropped off CI-2 at the Fort Totten Metro Station. CI-2 later told HSI Special Agents that during this meeting with **PEREZ-SOTO,** CI-2 provided **PEREZ-SOTO** the passport photos, biographical information and a $40.00 deposit for the fraudulent documents requested by CI-2.

22. **PEREZ-SOTO** left the area in the vehicle and HSI Special Agents continued mobile surveillance of the vehicle as it travelled through Washington, DC.

23. At approximately 12:07 p.m., HSI Special Agents lost sight of the vehicle driven by **PEREZ-SOTO** near the area of Columbia Road, NW and Quarry Road, NW, Washington, DC**.**

24. At approximately 12:15 p.m., HSI Special Agents regained sight of the vehicle as it was parked on 17th Street, NW, near the corner of 17th Street, NW and Shepherd Street, NW, Washington, DC.

25. At approximately 12:20 p.m., HSI Special Agents observed **PEREZ-SOTO** walking on

17th Street, away from his parked vehicle. **PEREZ-SOTO** entered the walkway to 3900 16th Street, NW and appeared to enter the apartment complex located at 3900 16th Street, NW, Washington, DC.

26. At approximately 1:43 p.m., CI-2 advised an HSI Special Agent that **PEREZ-SOTO** had just called CI-2 and advised that he would meet CI-2 in fifteen or twenty minutes at a gas station near the intersection of Kennedy Street, NW and New Hampshire Avenue, NW.

27. At approximately 2:03 p.m., HSI Special Agents observed **PEREZ-SOTO** leave the walkway near 3900 16th Street, NW and walk to his vehicle. **PEREZ-SOTO** entered his vehicle and departed the area. HSI Special Agents initiated mobile surveillance of the vehicle.

28. At approximately 2:12 p.m., HSI Special Agents observed **PEREZ-SOTO** park his vehicle near the corner of Kennedy Street, NW and First Place, NW, which is adjacent to the Valero gas station located at 5420 New Hampshire Avenue, NW. **PEREZ-SOTO** exited from the vehicle and walked to the Valero gas station.

29. At approximately 2:13 p.m., HSI Special Agents observed CI-2 meet with **PEREZ-SOTO** at the Valero gas station. During the meeting, HSI Special Agents observed **PEREZ-SOTO** give something to CI-2 in exchange for money from CI-2. **PEREZ-SOTO** was then observed placing the money in his pocket. CI-2 later told HSI Special Agents that during the meeting with **PEREZ-SOTO** at the gas station, CI-2 gave **PEREZ-SOTO** the remaining $200.00 in exchange for a rolled up piece of toilet paper that later was found to contain one fraudulent legal permanent resident alien card (also known as a "green card"), one fraudulent Pennsylvania Driver's License and two fraudulent U.S. Social Security cards.

30. At approximately 2:25 p.m., CI-2 handed over to HSI Special Agents a sheet of rolled toilet paper that contained one fraudulent legal permanent resident alien card (also known as a "green

card"), one fraudulent Pennsylvania Driver's License and two fraudulent U.S. Social Security cards that CI-2 had purchased from **PEREZ-SOTO**. The documents were seized by HSI Special Agents and retained as evidence in accordance with HSI policy.

31. At approximately 3:35 p.m., CI-2 was debriefed by HSI Special Agents. The HSI Special Agents showed CI-2 a photograph of **PEREZ-SOTO**. CI-2 identified the person in the photograph known to HSI Special Agents as **Roberto PEREZ-SOTO**, as the same person who sold the four fraudulent identification documents to CI-2 earlier in the day.

32. Based on the foregoing, I respectfully submit that there is probable cause to believe that Roberto **PEREZ-SOTO**, **a/k/a KIKO, a/k/a RICARDO** has violated Title 18, United States Code, Section 1028(a)(2), by selling fraudulent identification documents on January 30, 2014 and April 2, 2014.

_____
Corey S. Holsinger
Special Agent
Immigration and Customs Enforcement
Homeland Security Investigations

Subscribed and sworn to before me
this _____ day of September, 2014.

_____
United States Magistrate Judge